May it please the court, Jan Norman, on behalf of the petitioner Danny Valdez. Excuse me. Want some water? No, I think I'll get through, thank you. We can bring you a glass. Want some water? No, I'm fine, Your Honor. We have room service here, too. Well, in that case, I'd like steak and eggs. Coming right up. Thank you. It's not steak and egg, it's dyke and eggs. Okay. In approaching this argument, I was a little unclear as to what particular points the court would want me to address. So I decided to start with the issue of whether or not this court should consider the certificate of appealability that was granted by this court. And I would draw the court's attention to the United States Supreme Court decision in Slack. And Slack asked that we prove two things. First, a jurist of reason would find it debatable that there was a claim of a denial of a constitutional right. And then the second question is the same jurist of reason would find it was debatable whether the district court was correct in its procedural ruling. I believe that's the standard you apply when you have a situation like this, which is that the petition was dismissed as untimely. I would submit, Your Honor, that as to the first question, whether it's debatable. Well, we're pretty familiar with the standards of COA, so I don't know you want to burn all your time on that, but go ahead. Okay. Basically, the argument is, Your Honor, that he did state a claim of constitutional denial. Specifically, what you see in his claim, and I will focus on, it's sort of a prosecutorial misconduct claim. And what he says is that prior to trial, he did not want to waive time for a continuance of trial. Time was waived based upon a misrepresentation by the prosecution that their lead witness, the arresting officer, had been convicted of a crime and been dismissed from the police department. Based upon that representation by the prosecution, defense counsel, over the objection of petitioner, requested a continuance. It turns out that that information that was provided to defense counsel was incorrect. And as a result, the officer was only suspended on a DUI for four days. But because of the continuance, as petitioner also alleges, the prosecution gained additional time, during which he, the prosecution, was able to develop additional adverse facts to the petitioner, which involved an analysis of telephone conversations while petitioner was incarcerated. Ginsburg. Does the Respondent get to raise this issue of the validity of the COA at this point? I mean, I think the form of the COA was essentially what we ordinarily do. I gather that we don't ordinarily, if we're granting a COA on a procedural question, specify the particular constitutional issue underlying it that's debatable. We just say essentially there is one. And they're essentially contesting that habit or format. Do they get to do that now? Well, Your Honor, I present an argument that they couldn't actually raise this now because they didn't file any objection to the issuance of the COA. But the law — Can we also have law saying that in any event, even if the COA was erroneously issued, we still have jurisdiction? Yes, we do. And I cite those cases in the reply brief. So would you — are you recommending, nonetheless, that we now decide whether there is, in fact, a viable constitutional claim underneath this? Well, first of all, Your Honor — okay. Your Honor, first of all, I would argue that the COA is sufficient. The law does not require the Ninth Circuit to identify which particular claim is sufficient to state a claim for constitutional rights. On the second issue of whether or not they — maybe I'm misinterpreting the court — whether or not they should have raised this claim sooner, I believe that the new language under Rule 22 does not require them to file some sort of opposition. But it certainly would have been beneficial to the court had they either moved to dismiss the COA or moved to dismiss the appeal on this ground rather than waiting to raise it in their — in their Respondent's Brief. So to answer your question, I think I have cited cases in the reply brief at — I've cited a number of cases — where the — you know, if we have the ability to reconsider this, whether the COA was properly granted. But once it is properly granted, the court has the authority and jurisdiction to consider the appeal. I was arguing on a second level to say that even though the court may not have to identify which particular issue meets the constitutional muster or state's claim of constitutional violation, there clearly is at least one claim in this petition that — that would satisfy that. So then the questions go back to whether or not my client is entitled to equitable tolling. I believe that that has been covered probably quite adequately in the briefs. I would just point out that — that either the lockdown or the transcripts were the reason why your client didn't file. Your Honor, the evidence is — consists of the assertions. I mean, evidence on the record would be the assertions by the petitioner as well as the exhibits that he attached. If you look at the record, you will see that he requests — he had two copies of the transcripts. He gave one to the superior court, one to the DA. He then tried to get those back. And both — I understand that. And the district court gave, I think it was 94 days of tolling, statutory tolling, based on the transcripts. Correct. But the court did not — I'm sorry. When you get into the additional time that's needed, as I understand it, from trying to figure out the calculus of required time, then the question is, what about the additional days that are needed to toll? And part of it is apparently still relying on the absence of transcripts. And the other part is this Hispanic lockdown. Both of which comes in under the equitable tolling ground, as I understand it. But you need more than just the 94 days. That's correct. So how do you — where does one get the causation aspect of either the transcripts or the lockdown? Where's the evidence that that was the reason for his not filing and the evidence of any due diligence in that time frame? Well, the evidence — petitioner did not have trial transcripts, period. The court granted an equitable tolling from the time of the superior court to the time of the district court, the court of appeal. Denied equitable tolling from the court of appeal to the United — I'm sorry, the California Supreme Court. My argument is that for the exact same reason he needed the transcripts from superior court to court of appeal, the same reason he needed them from the court of appeal to the United States Supreme Court, which — But he, in fact — I'm sorry, California Supreme Court. He, in fact, finally filed without the transcripts. I'm sorry, what? He, in fact, filed without the transcripts. Yes, that's true. He filed without the transcripts. But if you look back at what happened in this case, his original petition was denied by the superior court because they said he should have raised these issues — either these issues should have been raised based on a direct appeal because they were on the record or they should have been raised as a habeas petition. In both cases, he needed to review the transcript in order to adequately respond to what the superior court had said. True, he could then just simply repeat his claims. When he was denied these transcripts, his only option was either to not pursue his appeal, not timely file his habeas in both the court of appeal and California Supreme Court, or, you know, if he — or get the transcripts. The point is that without the transcripts, he could not adequately address the reasons for the denial by the superior court. There was no change in that between the court of appeal to the California Supreme Court. So the very reasons — Now, what about — assuming that was true, assuming he got the second 82 days, was it timely then, or he's still late when he filed the district court petition? That's still correct. And there's a footnote in the report and recommendation that says, okay, even assuming you would give him until the date of denial by the California Supreme Court, the petition was due on September 28, 2007, was not filed constructively until October 24, 2007. So we still have roughly a month-ish in between, which is where the equitable tolling argument for the modified program of lockdown becomes important. Now, the court sort of is confusing, and I've tried to figure this out myself, but what I understand is that if the district court had given him the full tolling period on the transcripts, plus only 41 days of equitable tolling on the lockdown program, then his petition would have been timely. And he's claiming that he had — that there were 41 days of lockdown? Yes. What happened is he — well, the record is not entirely clear, which is one of the reasons I suggested that it may be appropriate to remand this for an evidentiary hearing. But he stated in his opposition to the motion to dismiss that he needed documents for the lockdown period, which, if you look at the record, he very diligently pursued, including trying — you know, being told by the prison he couldn't have them because he didn't have any money to pay for the copies. But basically what happens here is that he has alleged sufficiently that during that 41-day period, he was locked down and did not have access to the law library. What about the Ramirez v. Yates case, which seems to say that these lockdowns don't really matter? Lockdown with regard to non-access to law libraries, at least in this instance where it wasn't the whole period, it was only part of it. Well, we don't know how much of a period it was, Your Honor, because my client was prohibited, both by the prison system and by the district court, from obtaining the very documents he needed in order to demonstrate how much the modified program for Hispanics impeded his ability to prepare his petition, both in terms of access to the law library, plus we have the overweening thing, which is he doesn't have his transcripts. The point is that in order to answer the Ramirez question, my client had to have been given access to the very documents that they said he couldn't have. And then they turn around and say, we're going to deny it because you haven't made the argument. He hadn't made the argument because he didn't have the documents. It's a catch-22. Well, you're over time. Thank you, Your Honors. Okay. Deputy Attorney General Matt Mulford, on behalf of the board, may it please the court. You've got room service, too, if you'd like. Thank you. I already had some water. I appreciate it. I think this case is differently – I want to focus on the difference between evidence that's presented to the court and a petitioner's pleadings. And here his pleadings are insufficient. Can I ask you a question? Why was there all that resistance? Or why were his requests to have one copy of the transcripts returned to him? I don't know the answer. My guess is money. My office does not allow me to send things to petitioners. We can make them available if someone wants to come and pick them up. We're happy to do that. But we don't put them in the mail. Well, the letter says because we can, essentially. That's – the courts and the district attorney's office are different than the state. They may make decisions for different reasons. It doesn't sound like a very good reason. I'm sorry? It doesn't sound like the world's best reason. Not for me to say, Your Honor. No, I mean, it's probably all right because otherwise we wouldn't all be here today, you know, and waste a lot of money. And next time you need postage, call me and we'll – The postage is – the petitioners have the duty to pay the postage. The prisons will provide some copies. Was he told that? Was he told that? If you send us $5, we'll put it in one of these boxes at the post office. The supplies, you can put all you want in there and send it in. Was he told that? I don't think he was, but he didn't need to be. We sent him two copies. The state provided him two copies and he gave them away. Well, he gave one to the state and he gave one to the court. Sir, in terms of money, he said – I mean, is that a nice thing to do? It wasn't nice to beat up his wife. No, I didn't ask you that question. You know, I didn't ask you that question. It probably was not the nicest thing. No, it wasn't. And moreover – All of these people have been found guilty of committing some very bad acts, but we still have our Constitution. We still have fairness. We still have habeas corpus. It's been with us since the beginning, and we need to respect that. Do you agree with that? Yes, Your Honor. Okay. The letter said – I mean, it would be nice if you at least got your story straight because the letter said, please return transcripts. It's supposed to be an issue. Please advise. So I make the funds available. Thank you in advance. Right? So they didn't write back and say the problem is money. They said it's a problem and it's trouble and we know of no obligation to return to you what have now become our records. We choose to retain the copy you sent us. It is clear you possess multiple copies of the transcripts, which I don't know where they got that from. So it had nothing to do with money. Not according to the court or the district attorney's office. That's true, yes. Okay. So why did you say that? I thought the court's question was directed to how my office behaves when someone asks for our records. Okay. But that isn't the question here, is it? No. The question is whether he could plead what happened at trial and whether he could plead what went wrong at his trial. He didn't need his transcripts to do that. He could say, here are some errors that happened and here's why. Every good lawyer wants to have a transcript. And he was provided two copies and gave them away. But, you know, he gave them away because he wasn't thinking, oh, if I give the second one away, I'll never be able to get a copy back. They'll never really tell me about all I need is the postage. He was relying on what he thought was, I don't know what he thought, but he gave them away. Well, he's probably being like any careful person. He made sure both recipients had copies of the transcripts. If he was careful, the prison does have copying facilities and they do provide free copies for indigent petitioners so long as there is time with which to do so. And there are lots of prisoners. I suppose he didn't believe that they would send them back. I don't know what he was doing. Anyway, so anyway, he didn't have them. And now you're arguing that he didn't need them. Because his pleadings, which are based on what the evidence he was providing to the courts, his pleadings are not explaining what could possibly have mattered. When he filed his petition, he said, well, I don't have my transcripts, and so that's the reason for the delay. But why did you need your transcripts? What did you say? What evidence are you missing? The superior court said the petitioner provides no record to substantiate any of these contentions. The petition may be denied on that basis alone. So it was not so crazy to think I'd better have the record and substantiate it. That reference is to the habeas corpus pleadings when he's talking about the witnesses who did not appear at trial. When he says there's a witness Vasquez that should have been called, but he never explains why, what witness Vasquez might or might not have said or how it could have changed anything that happened at the trial. Particularly when it's a, you know, he said, she said dispute. Do you want to address the COA question? Sure. You realize that the form of the COA here is our standard form. So you're essentially saying we've been doing it wrong for 10 years. I've made my argument more than once. 15 years. It changed, I believe, when you modified the rule in 2001. Okay. So for 10 years we've been doing it wrong. Yes. And we should be doing what? Issuing at least finding and stating for the record at least one constitutional claim, so that in the event this case is remanded back to the district court because there may arguably be an error with the statute of limitations, there is a reason to proceed with the case. Well, the district court never said there wasn't a substantively valid constitutional claim. Respectfully. Habeas corpus is an exception to the general rule that cases are not re-litigated in federal court. Okay. I said that, sorry to say, in the previous case. But Rucker-Feldman, full faith and cred, the 11th Amendment, Younger Extension, there are doctrines that generally prohibit this. Habeas has always been the exception. But in 1996, Congress cut back on that really broad exception on Habeas, and now it is limited more than it used to be. 2244 talks about successive petitions. It talks about statute of limitations. 2254 talks about, you know, merits determinations. And there's one more cutback, and that's 2250.30c, the certificate of appealability. And it makes some sense, before we take the time to take a remand and potentially a second appeal, let's make sure that this Petitioner has pleaded that something might have gone wrong in his trial. Even though that issue was not addressed in a district court, so we have no district court reading that? Correct. This is our argument. You understand the argument? It's based on SLAC and based on a reading of the statute. That determination should have been made before today. Now, we disagree with counsel's argument that we have waived this argument because the rule changed. The old rule of the cases that she has cited put the State on notice that within 35 days of either notice of appeal or a motion, a motion in this Court requesting a certificate or a broader certificate, we had an obligation to respond. This Court's rule, 22, has changed. And that 35-day trigger was not accepted in this case. So there was no time with which to come before here. So you were relying on the rules that existed at the time? Correct. Yes. Sort of like the other case. Sure. I'm sorry. I'm not understanding this. Yes, I'm listening. The rule now says, as I understand it, if Petitioner files a motion for COA with the Court of Appeals, Respondent may file a response to the motion for COA within 35 days. How is that different from how it was previously? The – previously, there was a trigger. The trigger was whether or not the Petitioner filed a motion. So with – and the old rule of practice was – I know I've filed lots of these. We count 30 days after the notice of appeal is filed. If nothing came in from the pro se Petitioners frequently, it did not, we would send something like a form letter saying, Ninth Circuit, please do not grant a COA for whatever reasons are applicable to that case. Then often the Petitioner would file something sometime after that, and we would have to respond to whatever particular thing he said. So that was the old rule, where we had to file often two separate letters, and we had a set time to do so after both of them. Under the new rule, we have no obligation to file anything unless the Petitioner specifically requests that happen. And in this case, there was no specific request. In fact, when the certificate was granted by this court, the filing fees had not been paid. So the day the certificate was issued, I don't think we should have filed anything then, because arguably there was no reason for this court to hear the case. When the filing fees were paid, counsel was appointed. And again, the same rule that we're talking about provides counsel with additional time to certify additional issues. Again, that never happened. So from the State's perspective, and if we're wrong, we're confident this court can tell us, we had no duty to file before we filed an appellant's brief. But you didn't have any duty. I see that a little bit. I'm assuming you're hard to understand that, because the language was permissive in the earlier rule and was permissive in the later rule. The earlier rule accounted for all possibilities. Either a notice of appeal would be filed, or a certificate would be filed, or both. And we had a duty to file within 35 days. But the duty is what I'm not getting. It says in either case the respondent may file a response. Okay. We're using the word duty because there are cases that file a waiver. And so I think to waive something, we must have done something before then. The rule prior, the older rule, put that bonus on us after 35 days of two different events. Now that does not occur under the new rule. I'm not seeing it. Can I ask you something? Of course, Your Honor. We get, as a matter of fact, I can't even remember the last time we had an appeal on a habeas petition from a federal district court. Why is it that we get thousands and thousands and thousands of state habeas petitions? Anybody ever thought about that? I don't want to. My answer is that California is a big place. No, no. And we have more crime in California. I'm sorry. I don't mean it. No, no. I mean, we have the law. We have, in our circuit, I think we cover, you know, 25 percent at least of all federal cases filed in America. But you rarely see a habeas petition come out of federal courts. You want me to tell you why? Happy to hear you, Your Honor. Because the federal judges do a much better job. They're careful. They're thoughtful. And they don't send out little postcards to people. They don't try to make it tough on them and use all these evasive actions. So we don't get them. But all of these statutes and rules and all the rest of it have been filed. And I've been doing this for a long, long time. And I served on the state court, not for a long time, but for a number of years. And it's just a different way of looking at things, I guess. So we get thousands of these. Our court does. And maybe one percent of them ever get granted. And when that happens, like my good friend, Evel Younger, used to go crazy and jump on the federal courts. And I'd say to him, Evel, that's just one out of a thousand. And I hope he's listening to me. But, you know, he had a good reason for being upset, so I won't disclose it. It was personal. You know, and I've been preaching this for years, but nobody listens. So you're a captive audience. So you need to look into those things, you know. And, you know, another reason is that it's a system. A federal judge, when he gets a criminal case, knows that he's going to have it from the time his name comes up on the wheel until that case is over with. And it may take a long, long time. So they're very careful on how they handle these cases, you know. And because they know if something goes wrong, it's going to come back to them. But in the state court, everybody's shuffled around all the time. That's one. I'll take all your points back and I'll discuss them respectfully. We disagree with the state court. Well, I know. You don't even have to be respectful. Let's talk about it. I know your time is up, but I really do. I think you have a procedural problem in raising this Lambright-Slack issue because of our case law saying that we don't go behind a COA. And I think that's a good thing. But leaving that aside, I'd like to know if we are doing it wrong for the last 10 years. Our position is yes. And my office waives it all the time. I'm sorry? I think my office waives the argument in most cases. Well, I haven't seen it before, to be frank. I'm sorry, go ahead. I've seen a lot of habeas appeals and I haven't seen it before, a lot of procedural habeas appeals. We have two others here and it hasn't been raised. Do we have this? Does your brief adequately cover this or is there something in the supplemental briefing would help the panel? I'm prepared to submit on my briefing as it is. I would be happy to write anything if the court would. We have had a discussion in the nature of an institutional discussion and we've got good counsel on both sides. So we'll let you know. We're in good shape. Okay. Thanks for being a good listener. Your Honor, with your indulgence, three quick points. In response to the question about Ramirez, I believe the case law is clear that the grounds for granting equitable tolling in a situation of a prison lockdown are highly fact specific. The second point I want to say is that under Waitley, this is a case that may be appropriate to remand, to make that factual finding. And the last point on the COA, the AG's position would require me as the appellate attorney to ask you to certify an issue that had not been raised or, well, that had not been litigated in the district court. So there I would be saying please determine the issue of whether or not there was prosecutorial misconduct. Well, I don't understand that to be their position. I think their position is that we have to say that there is a viable issue, not that it should be certified. In other words, we have to say that there is a COA on a procedural issue and that it should be certified because there is an underlying viable merits issue, but not that that issue should be certified. I understand what you're saying, Your Honor. I understood their argument to be different and that their argument was there has to be a certified issue. Because to meet the same requirement of a plausible claim is essentially the same as granting the COA. So if the court came back and said, well, we reviewed all the claims and Claim 8 is, you know, passes constitutional muster, what the court is also saying to me as the appellate attorney is that you should, you know, you should be asking for a certificate of appealability on that. That's what I understood. If I understood the AG's position correctly, I apologize. Thank you very much. Thank you. Thank you. All right. We'll call the Tokidoki versus Fortune Dynamics.
judges: Pregerson, Fisher, Berzon